WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bert Parrish,<br><br>          Plaintiff,<br><br>v.<br><br>Vulcan Materials Company,<br><br>          Defendant. | No. CV-25-01523-PHX-KML<br><br>**ORDER** |

Bert Parrish filed a putative class and collective action complaint against Vulcan Materials Company alleging claims under the Fair Labor Standards Act ("FLSA") and the Arizona Wage Act ("AWA"). The complaint alleges Vulcan violated the FLSA by failing to pay overtime wages and violated the AWA by failing to pay earned wages in a timely manner. Vulcan seeks to compel arbitration because Parrish allegedly signed an arbitration agreement as part of his employment onboarding. The motion to compel arbitration is granted.

**I. Standard for Motion to Compel Arbitration**

In resolving a motion to compel arbitration, the court uses "the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). This standard requires "view[ing] the evidence in the light most favorable to the nonmoving party." *Rocha v. Asurion, LLC*, 724 F. Supp. 3d 1213, 1219 (E.D. Wash. 2024). The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence.

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Furst v. Walter*, No. CV-18-02639-PHX-DJH, 2020 WL 2198531, at *1 (D. Ariz. Jan. 30, 2020).

**II. Factual Background**

Vulcan Materials Company is the nation's largest producer of construction aggregates and a major producer of aggregates-based construction materials. (Doc. 1 at 4–5.) Vulcan requires job candidates to submit applications through an online system called Taleo. (Doc. 13-3 at 3.) Taleo is a third-party cloud-based platform hosted by Oracle. (Doc. 17-2 at 4.) Candidates must create a unique username and password on Taleo to apply for jobs at Vulcan. (Doc. 13-3 at 3.) Vulcan personnel cannot retrieve the password selected by an applicant. (Doc. 17-2 at 2.) Taleo automatically records the date and the IP address of the computer used to sign any application or onboarding documents. (Doc. 13-3 at 3.)

As part of the application process, candidates who are unwilling to sign an arbitration agreement are disqualified from employment consideration. (Doc. 13-3 at 3.) Vulcan's records show Parrish submitted an employment application on August 25, 2023, from a computer with the IP address 74.37.23.244. (Doc. 13-3 at 3.) Parrish does not dispute submitting an application through Taleo nor that he set up a unique username and password when he did. He provided substantive information, like the names of references and whether Vulcan had his permission to contact them, in the application. (Doc. 13-4 at 3–5.) And according to Vulcan, Parrish must have indicated he was willing to sign an arbitration agreement because he was not disqualified on that basis. (*See* Doc. 13-3 at 3.) Sometime before November 22, 2023, Vulcan made Parrish a job offer.

Applicants who receive job offers are asked to log back into their Taleo account to complete onboarding forms. (Doc 13-3 at 3.) Vulcan's new hires must complete the onboarding process using the same unique username and password they created when applying. (Doc. 17-2 at 2.) Onboarding forms required by Vulcan include an arbitration agreement, Form I-9, and a beneficiary designation. The arbitration agreement requires that disputes with Vulcan arising out of an employee's employment or termination of employment must be settled through arbitration. (Doc. 19-1 at 1.) This includes disputes

under the FLSA or "any similar federal, state and local laws." (Doc. 19-1 at 1.) The arbitration agreement also contains a class or collective action waiver requiring all disputes proceed on an individual basis. (Doc. 19-1 at 3.) To sign the agreement, applicants receive a link via email from Taleo to log back into their Taleo account. (Doc. 13-3 at 3.) On logging in, applicants are presented with the arbitration agreement, which they must read and sign. (Doc. 13-3 at 3.) If a newly-hired employee does not sign the arbitration agreement, Vulcan rescinds the employment offer. (Docs. 13-3 at 4; 13-4 at 11.)

Taleo automatically records an applicant's progress on various onboarding tasks, including the date and time each task was completed. (Doc. 17-2 at 3.) On November 22, 2023, at 5:15:15 p.m., Vulcan's Human Resources Manager marked Parrish's pre-employment screening task complete after Parrish passed a background check and drug screening. (Doc. 17-2 at 3, 7.) One second later, Taleo created an arbitration agreement task for Parrish (Docs. 17-2 at 3; 19-2 at 3), which Vulcan alleges should have simultaneously sent an email notification to Parrish (Doc. 17-2 at 3). An hour and a half later at 6:43:58 p.m., Taleo recorded that Parrish completed the arbitration agreement. (Doc. 19-2 at 2–3.) The arbitration agreement was affixed with Parrish's name, Social Security number, date of birth, and zip code. (Doc. 19-1 at 5.) The system captured the IP address of the computer used to sign the agreement as 74.37.23.244. (Doc. 19-1 at 5.) Two seconds after the arbitration agreement was submitted, Taleo created Form I-9 and beneficiary designation tasks. (Doc. 17-2 at 10, 13.) Vulcan's records indicate Parrish submitted the I-9 and beneficiary forms later the same evening at 7:23:27 p.m. and 7:34:47 p.m. respectively. (Doc. 17-2 at 10, 13.)

Though Parrish does not deny applying through Taleo, he claims he has never seen the arbitration agreement and does not recall signing it. (Doc. 15-1 at 1.) He says he signed "most, if not all" of his onboarding documents "manually and in-person." (Doc. 15-1 at 1.) He has searched his emails and found none related to signing the arbitration agreement. (Doc. 15 at 2.) Parrish denies signing the agreement "[b]ased on [his] review of the document, [his] recollection, and upon reviewing [his] email records[.]" (Doc. 15-1 at 2.)

In May 2025, Parrish filed his complaint alleging violations of the FLSA and AWA. (Doc. 1 at 1–2.) Vulcan moved to compel arbitration shortly thereafter and the parties completed full briefing, including a sur-reply from Parrish. (Docs. 13; 15; 17; 23.)

**III. Analysis**

    **A. Motions to Compel Arbitration**

"The Federal Arbitration Act (FAA) requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing 9 U.S.C. § 3). "The FAA limits the court's role to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Id.* (simplified). Generally, federal courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). But where only the existence of an arbitration agreement is at issue, the presumption in favor of arbitrability does not apply. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014).

Here, Parrish disputes only the existence of an arbitration agreement and does not contest that the Vulcan arbitration agreement would encompass his FLSA or AWA claims. (Doc. 15-1 at 1–3.) Accordingly, the court does not apply the general presumption in favor of arbitrability.

    **B. Formation of Agreement to Arbitrate**

The threshold—indeed only—question in this case is whether an arbitration agreement exists. In making that determination, the court applies ordinary state-law principles governing the formation of contracts. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).

In Arizona, a valid contract (electronic or otherwise) requires a manifestation of mutual assent by the parties. *Myers v. Experian Info. Sols. Inc.*, 734 F. Supp. 3d 912, 919 (D. Ariz. 2024). Electronic contracts and their corresponding electronic signatures are valid

1  and enforceable under Arizona law. A.R.S. § 44-7007. An electronic signature on an
2  arbitration agreement—even one the plaintiff does not remember making—may
3  demonstrate an assent to contract. *Cruz v. Fitness All. LLC*, No. CV-24-02926-PHX-JJT,
4  2025 WL 1936651, at *3 (D. Ariz. July 15, 2025) ("regardless of whether Plaintiff states
5  he does not remember signing the arbitration agreement as part of his onboarding
6  documents, Plaintiff's electronic signature on the arbitration agreement indicates his assent
7  to contract, and valid contract formation occurred"); *see also Myers*, 734 F. Supp. at 921
8  (D. Ariz. 2024) (holding lack of recall or awareness does not invalidate arbitration clause
9  given duty to read before accepting).

10 Under Arizona law, an electronic signature is attributable to a person if it was the act of the person or their agent. A.R.S. § 44-7009(A). That the act was the person's may be shown by any means, including proof that a security procedure effectively attributed the electronic signature to the person. *Id.* The effect of an attributed electronic record or signature is determined by the context and circumstances at the time of its creation. A.R.S. § 44-7009(B). An electronic signature is considered secure if it was (1) "[u]nique to the person using it," (2) "[c]apable of verification," (3) "[u]nder the sole control of the person using it," and (4) "[l]inked to the electronic record to which it relates in such a manner that if the record were changed the electronic signature would be invalidated." A.R.S. § 44-7031. Accordingly, under Arizona law, an electronic signature that can be reliably attributed to an employee through security procedures is sufficient to establish mutual assent and formation of an arbitration agreement, even if the employee later denies or cannot recall signing. *See Myers*, 734 F. Supp. at 921.

23 Here, there is no dispute the arbitration agreement is affixed with an affirmative response, Parrish's name, Social Security number, date of birth, and zip code. But Parrish disputes ever seeing or signing the agreement, pointing to his own lack of recall, failure to locate emails showing he received or confirming he signed it, and an online search tool suggesting the IP address associated with his signature may be located in New York. (Docs. 15 at 2; 15-1 at 1–3.)

Despite his denials and even viewed in the light most favorable to Parrish, Vulcan has provided sufficient evidence to authenticate Parrish's signature on the arbitration agreement. This evidence includes the requirement that an individual know the Taleo username and password associated with Parrish's employment application to sign the agreement (which Vulcan avows it did not have) and the match between the personal information on Parrish's application (*e.g.*, Social Security number, zip code, and date of birth) and the signed arbitration agreement. *See Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-CV-01103-JCS, 2014 WL 2736020, at *5 (N.D. Cal. June 11, 2014) (finding electronic signature valid where defendant showed plaintiff was required to enter her Social Security number, birthdate and zip code, and would not have been able sign if the information was not correct). Additionally, Vulcan provides evidence that a candidate would be disqualified from the application process if he did not agree to later sign an arbitration agreement (Doc. 13-3 at 3), and any new hire would be unable to proceed with onboarding if they did not complete the arbitration agreement task on Taleo (Doc. 17-2 at 3).[1] Here, Parrish *was* offered a job and *did* proceed with the onboarding process, indicating he both agreed to later sign an arbitration agreement during the application process and did sign the agreement during the onboarding process. The evidence is supported by the declaration of a human resources employee with personal knowledge of Vulcan's hiring practices and onboarding software as well as electronic records from Taleo. *See Hayford v. Santander Consumer USA Inc.*, No. CV-20-01808-PHX-JJT, 2021 WL 3934328, at *3 (D. Ariz. Aug. 11, 2021) (determining declaration of human resources employee with personal knowledge of company's hiring practices provides foundation for arbitration agreement).

Ultimately, this robust combination of security procedures and electronic records—a demonstration of standard onboarding procedures, an established records trail, unique username and password requirements, and matching personal information across forms—is sufficient to authenticate a signature on an arbitration agreement. *See Martin v.*

---

[1] Parrish's declaration hints at unconscionability based on Vulcan's take-it-or-leave it arbitration agreement. (*See* Doc. 15-1 at 1.) The court would have rejected that argument if Parrish had made it. *See Scott-Ortiz v. CBRE Inc.*, 501 F. Supp. 3d 717, 726 (D. Ariz. 2020).

*TEKsystems Mgmt. Inc. (Fn)*, No. CV-20-02192-PHX-SPL, 2021 WL 2334389, at *2–3 (D. Ariz. June 8, 2021); *see also Tagliabue v. J.C. Penney Corp., Inc.*, 2015 WL 8780577, at *3–4 (E.D. Cal. Dec. 15, 2015) (finding declaration describing onboarding steps and security procedures sufficient to show plaintiff signed arbitration agreement despite lack of recall). Vulcan has carried its burden to prove an arbitration agreement exists by a preponderance of the evidence. *See Knutson*, 771 F.3d at 565.

Parrish's evidence fails to create a genuine dispute of material fact as to the existence of the agreement. First, as to his lack of memory, the failure to recall signing an arbitration agreement is not enough to invalidate an electronic record of signature. *Martin*, 2021 WL 2334389, at *3. The same goes for Parrish's lack of emails about the agreement: his failure to find emails in his inbox more than a year later does not show a link was never sent. Parrish's arguments surrounding the appearance of the electronic signature also fail. Under Arizona law, an electronic signature need not look "normal" to be valid. *See* A.R.S. §§ 44-7031-7033. The signature on the arbitration agreement is no exception.

Parrish's online searches for the location associated with the IP address likewise fail to raise a genuine dispute of material fact. The security procedures and records presented by Vulcan alone would be enough to show Parrish signed the arbitration agreement even without an attached IP address. A.R.S. § 44-7031. Although free internet tools providing geolocations associated with an IP address may sometimes be informative, they are ultimately not an ironclad indicator of location. (Doc. 13-2 at 3; *see also* Doc. 17-1 at 4 (listing Gloversville, NY, Greenville, CA, Lucerne Valley, CA, Galion, OH, and Kingston, PA as possible locations connected to the IP address 74.37.23.244).) And most importantly as to the IP location, Parrish fails to explain why his job application—a document he does not dispute submitting—is also affixed with the same IP address as the arbitration agreement. Parrish speculates Vulcan had the ability to alter his submissions through Taleo, but the form Vulcan marked as complete was related to a background check and drug screening (Doc. 17-2 at 3), and there are no indications Vulcan personnel were able to adjust or edit forms submitted on Parrish's end. Vulcan provides evidence it did not have

1 access to users' unique login and password information. (Doc. 17-2 at 2.) For these reasons, Parrish's geolocation search arguments amount to no more than conjecture.

Finally, Parrish does not dispute completing the Form I-9 or beneficiary designation, which were submitted through Taleo less than an hour after the arbitration agreement. It is implausible anyone other than Parrish completed the arbitration agreement in the period between the application submission (which Parrish does not deny) and the Form I-9 and beneficiary designation submissions (which Parrish also does not deny).

Parrish's contentions are therefore not enough to create a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). A valid arbitration agreement exists between the parties, and there is no dispute this agreement encompasses Parrish's claims. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.") Accordingly, Vulcan's motion to compel arbitration is granted.

**IT IS ORDERED** the Motion to Compel (Doc. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** the Clerk of Court is directed to administratively close this case, whereupon, by proper motion from a party, it may be reopened or dismissed with prejudice.

Dated this 23rd day of September, 2025.

Honorable Krissa M. Lanham
United States District Judge